2013 WL 2223133
Only the Westlaw citation is currently available.

UNPUBLISHED OPINION. CHECK COURT RULES BEFORE CITING.

UNPUBLISHED
Court of Appeals of Michigan.

Robert HOWARD, Plaintiff–Appellee,
v.
The MICHIGAN DEPARTMENT OF CORRECTIONS, Douglas Houghton, Paul Renico, Larry Tupica, and Shelly McCormick, Defendants–Appellants,
and
Blaine Lafler, Defendant.

Docket No. 304258.
|
May 21, 2013.

Gratiot Circuit Court; LC No. 08–011362–NZ.

Before: HOEKSTRA, P.J., and TALBOT and WILDER, JJ.

**Opinion**

PER CURIAM.

**\*1** In this case involving alleged age and disability discrimination, the Michigan Department of Corrections, Douglas Houghton, Paul Renico, Larry Tupica, and Shelly McCormick (Department) appeal as of right the trial court's August 30, 2010, order denying the Department's motion for summary disposition; the March 1, 2011, judgment in favor of Robert Howard after a jury trial; and the court's May 10, 2011, order denying the Department's motion for judgment notwithstanding the verdict and awarding Howard attorney fees and costs. We affirm.

## I. MOTION FOR SUMMARY DISPOSITION

### A. STANDARD OF REVIEW

Appellate review of a trial court's denial of a motion for summary disposition is de novo.[1] "A motion for summary disposition brought under MCR 2.116(C)(10) tests the factual support of a claim."[2] A motion brought under this subsection is reviewed by considering "the pleadings, admissions, and other evidence submitted by the parties in the light most favorable to the nonmoving party."[3] Summary disposition under MCR 2.116(C)(10) is proper "if there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law."[4]

[1] *Lind v. City of Battle Creek,* 470 Mich. 230, 238; 681 NW2d 334 (2004).

[2] *Id.* (citation and quotation marks omitted).

[3] *Sallie v. Fifth Third Bank,* 297 Mich.App 115, 117–118; 824 NW2d 238 (2012) (citation and quotation marks omitted).

[4] *Id.* at 118.

### B. AGE DISCRIMINATION

On appeal, the Department argues that the trial court erred when it denied its motion for summary disposition regarding Howard's federal and state age discrimination claims as there was no evidence presented to support the claims. We disagree.

Howard brought age discrimination claims against the Department pursuant to the federal Age Discrimination in Employment Act of 1967 (ADEA),[5] and Michigan's Elliott–Larsen Civil Rights Act (CRA).[6] In pertinent part, the ADEA makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age;" or "to limit, segregate, or classify his employees in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's age."[7] The prohibitions against age discrimination contained in the ADEA apply to "individuals who are at least 40 years of age."[8] Michigan law similarly "seeks to eliminate the effects of offensive or demeaning stereotypes, prejudices, and biases."[9] The CRA "provides that an employer shall not discriminate 'against an individual with respect to employment, compensation, or a term, condition, or privilege of employment because of ... age,' " and is not limited in application to employees of older age.[10]

5   29 USC 621, et seq.

6   MCL 37.2101, et seq.

7   29 USC 623(a)(1), (2).

8   Former 29 USC 631(a).

9   *Zanni v. Medaphis Physician Servs. Corp.,* 240 Mich.App 472, 477; 612 NW2d 845 (2000).

10   *Id.* at 475–476, quoting MCL 37.2202(1)(a).

Discrimination under the ADEA or the CRA can be proved by either direct or circumstantial evidence.[11] Under the federal law, "[d]irect evidence of discrimination is that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions."[12] "Any [alleged] discriminatory statements must come from decisionmakers to constitute evidence of discrimination."[13] To prevail on a claim for age discrimination under federal law using direct evidence, the plaintiff must prove "by a preponderance of the evidence ... that age was the 'but-for' cause of the challenged employer decision."[14] Similarly, to successfully assert a claim for age discrimination under the CRA using direct evidence, "the plaintiff must present evidence that (1) he had skills, experience, background, or qualifications comparable to the retained employee and (2) his age was a determining factor in the adverse employment decision."[15]

11   *Blizzard v. Marion Technical College,* 698 F3d 275, 283 (CA 6, 2012); *Featherly v. Teledyne Indus., Inc.,* 194 Mich.App 352, 358–359; 486 NW2d 361 (1992).

12   *Geiger v. Tower Auto,* 579 F3d 614, 620 (CA 6, 2009) (citation and quotation marks omitted).

13   *Id.* at 620–621.

14   *Id.* at 621 (citation and quotation marks omitted).

15   *Featherly,* 194 Mich.App at 358–359.

**\*2** Age discrimination can be demonstrated by circumstantial evidence pursuant to both the ADEA and the CRA if a plaintiff shows "(1) membership in a protected group; (2) qualification for the job in question; (3) an adverse employment action; and (4) circumstances that support an inference of discrimination."[16] If the above elements are met, the burden is then shifted to the employer to "articulate some legitimate, nondiscriminatory reason" for the termination.[17] "If the defendant meets this burden, then the burden of production shifts back to the plaintiff to demonstrate that the proffered reason is a pretext."[18] The burden-shifting approach does not apply to ADEA claims based on direct evidence.[19]

16   *Blizzard,* 698 F3d at 283 (citation and quotation marks omitted); *Featherly,* 194 Mich.App at 358.

17   *Blizzard,* 698 F3d at 283, citing *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802; 93 S Ct 1817; 36 L.Ed.2d 668 (1973) (quotation marks omitted); *DeBrow v. Century 21 Great Lakes, Inc.,* 463 Mich. 534, 539–540; 620 NW2d 836 (2001).

18   *Sutherland v. Mich. Dep't. of Treasury,* 344 F3d 603, 615 (CA 6, 2003); *DeBrow,* 463 Mich. at 539–540.

19   *Geiger,* 579 F3d at 622; *DeBrow,* 463 Mich. at 540.

In the instant case, while the Department argues that there was no evidence of age discrimination presented, we find that there were questions of fact regarding whether circumstantial evidence of age discrimination was presented. It is undisputed that during the time period at issue, Howard was a member of a protected group as he was 64 years old on the last day he worked for the Department. Howard's official job description was that of a corrections officer as that is the position for which he was classified and funded. Howard, however, worked on a daily basis supervising and overseeing prisoners participating in the building trades program, also known as the Prison Build Program, in the vocational trades department. The Department admitted that Howard did not perform the typical duties of a corrections officer, and "was not required to perform physical management of prisoners in the form of take-downs or cell extractions on a daily basis." Nor did

he spend a significant amount of time "herding" prisoners, and spent less than five percent of his time responding to prisoner disturbances. Therefore, there was a question of fact regarding what Howard's position was.

Assuming arguendo that Howard's position was in the vocational trades department, there was also a question of fact regarding whether Howard was qualified to perform the job. Howard had a pre-existing back injury that he suffered while he was in the military in the 1960's. The injury caused Howard intermittent pain since it was incurred. The evidence supports that Howard disclosed the injury to the Department before he was hired, and that the Department was aware that he suffered periodic back pain. Although the Department contends that Howard was not qualified to be a building trades instructor based on his classification and work restrictions, the evidence supports the contrary. Howard had worked in the vocational trades department for approximately nine years, the Department admitted that Howard performed his job well, and that Howard had no problems performing his job duties.

Evidence was also presented to support that Howard suffered an adverse employment action. "An adverse employment action is a 'materially adverse change in the terms or conditions of ... employment because of [the] employer's conduct.'"[20] According to warden Blaine Lafler, when custodial staff members call in sick, they are required to obtain a doctor's note to return to work if they are going to be off work for more than approximately three days. It is then determined whether the employee is fit for duty. The same rule applies to employees complaining of back issues. McCormick in human resources testified, however, that if an employee is hospitalized for only one day, then a doctor may need to certify that they are fit to perform their duties before returning to work. There was deposition testimony elicited from Captain Houghton and Sergeant Tupica that a doctor's clearance may also be required of an employee who suffers an injury. Tupica explained that there is not a policy containing a list of medications whose consumption necessitates that employees obtain medical clearance before returning to work.

[20] *Mitchell v. Vanderbilt Univ.,* 389 F3d 177, 182 (CA 6, 2004).

**\*3** Evidence was presented that, contrary to the above Department policies, Howard was not permitted to return to work after a request for a one day absence. On May 3, 2007, Howard advised his supervisor Tupica and others by email that he would need "one more day" for his back, that he was taking Flexeril, which he advised was a restricted driving medication, but that he would try to be at work the following day. After Tupica spoke with his supervisor, Houghton, Tupica advised Howard that he would need to obtain a doctor's note indicating that he was 100 percent able to return to work "without restrictions" before he would be permitted to return. Tupica explained that he required doctor's clearance before Howard could return to work because Howard indicated that he had a back problem for which he was taking medication. Tupica admitted, however, that Howard's email did not state that he injured his back, or that he would be on Flexeril long term. Howard also testified at his deposition that he did not suffer a new injury to cause him to take Flexeril. Thus, there is evidence that, under the circumstances of this case, the Department's requirement that Howard obtain medical clearance before returning to work was an adverse employment action.

Additionally, according to Howard, he asked the Department to send his physician a description of his job duties so that he could be cleared to return to work. The job description of a corrections officer was sent by the Department to Howard's physician. The job description indicated that ten percent of the time a corrections officer intervenes in prisoner altercations, responds to aid staff and prisoners in medical emergencies, and participates in cell extractions. Howard testified that the job description was not descriptive of the job duties that he actually performed in the vocational trades department, as he was only involved in one physical altercation with a prisoner in 17 years. Howard indicated that the work he performed was not custodial and his responsibilities were similar to that of any other type of instructor. Howard explained that he "maintain[ed] the security of the institution," controlled the tools, and "[d]evelop[ed], interview[ed], [and] hir[ed] prisoners to go into [the] program to develop skill sets that they could use on the outside[.]"

Howard advised his physician, Dr. Amarish Pontis, of his normal job duties, but after reviewing the job description provided by the Department, Pontis restricted Howard from lifting anything over 20 pounds, prescribed physical rehabilitation, determined that he was unable to work as a corrections officer, and prohibited him from performing duties requiring "prisoner contact." Thus, there is evidence to support that by sending an inaccurate job description to Howard's physician, the Department prevented Howard from obtaining the clearance that the Department required. Thereafter, Howard was unable to obtain the requisite medical clearance to return to work, which Howard claims resulted

Exhibit A, page 3 of 8

WESTLAW © 2022 Thomson Reuters. No claim to original U.S. Government Works. 3

in his forced retirement. Accordingly, there was additional evidence presented of an adverse employment action.[21]

[21]   *Id.*

**\*4** Finally, there was a triable issue regarding whether the circumstances surrounding Howard's retirement supported an inference of age discrimination. Testimony was elicited from Howard that retired warden Renico would consistently refer to him as "old," and ask Howard when he was going to retire. Renico admitted that he referred to Howard as old and stated that he asked him when he was ready to retire, but indicated that any inquiry regarding retirement was for future staffing purposes. Additionally, Howard testified that in 2007, shortly before he was allegedly prevented from returning to work, Houghton would call him an "old fucker" and ask Howard when he was going to retire so that Houghton would not have to put up with him anymore. Accordingly, the trial court's denial of the Department's motion for summary disposition of Howard's federal and state age discrimination claims was proper.

The Department argues that its nondiscriminatory reason for prohibiting Howard from returning to work was the note provided by Howard's doctor indicating that he had work restrictions preventing him from having any prisoner contact. As aptly noted by Howard, however, the Department's decision to refuse to allow Howard to work was made before the Department received Pontis' note. Therefore, we find the argument unpersuasive.

### C. DISABILITY DISCRIMINATION

The Department next argues that trial court erred when it denied its motion for summary disposition regarding Howard's federal and state disability discrimination claims as there was no evidence presented to support the claims. We disagree.

The applicable version of the federal American with Disabilities Act (ADA) prohibits an employer from discriminating "against a qualified individual with a disability."[22] A violation of the ADA may be established by both direct and circumstantial evidence.[23] Here, Howard claims that there is circumstantial evidence of disability discrimination. Thus, to prove his claim, Howard was required to "show '(1) that ... he is an individual with a disability, (2) who was otherwise qualified to perform a job's requirements, with or without reasonable accommodation; and (3) who was discriminated against solely because of the disability.' "[24] If the above elements are established, then the burden "shifts to the [Department] 'to articulate some legitimate, nondiscriminatory reason' for its actions."[25] If the Department meets its burden, Howard "must show by a preponderance of the evidence that the proffered explanation is a pretext for discrimination."[26]

[22]   *Talley v. Family Dollar Stores of Ohio, Inc.,* 542 F3d 1099, 1105 (CA 6, 2008), quoting former 42 USC 12112(a) (quotation marks omitted).

[23]   *Talley,* 542 F3d at 1105.

[24]   *Id.* (citation omitted).

[25]   *Id.* (citation omitted).

[26]   *Id.*

An individual is disabled under the ADA if he "(1) 'has a physical or mental impairment that substantially limits one or more of the major life activities of such individual,' (2) 'has a record of such impairment,' or (3) is regarded by [his] employer as having such an impairment."[27] " '[M]ajor life activities' include functions 'such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working .' "[28]

[27]   *Gruener v. Ohio Cas. Ins. Co.,* 510 F3d 661, 664 (CA 6, 2008) (citations omitted).

[28]   *Talley,* 542 F3d at 1107.

**\*5** To be substantially limited in the major life activity of working the plaintiff must show that he is " 'significantly restricted in [his] ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person with comparable training, skills, and abilities.' "[29] The " 'inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working.' "[30] Additional factors to consider to determine whether an individual is disabled due to his inability to perform either a class or broad range of jobs include: "[t]he job from which the individual has been disqualified because of an impairment, and the number and

types of jobs utilizing similar training, knowledge, skills or abilities, within that geographical area, from which the individual is also disqualified because of the impairment (class of jobs)." [31]

29    *Burns v. Coca–Cola Enterprises, Inc.,* 222 F3d 247, 253 (CA 6, 2000) (citation omitted).

30    *Id.* (citation omitted).

31    *Id.* at 254 (citation, quotation marks and emphasis omitted).

In the instant case, there is evidence to support a finding that Howard had a physical impairment substantially limiting one or more major life activity. Howard's back pain caused him to be restricted from lifting more than 20 pounds, frequently twisting, turning and bending, as well as alternating from a sitting to a standing position. Howard's work restrictions show that prohibition from performing such activities affects the major life activity of working. Howard's ability to work can be found to be substantially limited as his back pain prevents him from performing the class of jobs of a correctional officer, which requires lifting more than 20 pounds, frequent twisting, turning and bending, as well as alternating from a sitting to a standing position. Thus, there is evidence to support that Howard was actually disabled.

An employee is regarded by his employer as having an impairment if he is " 'perfectly able' to perform a job, but [is] 'rejected ... because of the myths, fears and stereotypes associated with disabilities.' " [32] Thus, such a standard is applied when " '(1) [an employer] mistakenly believes that [an employee] has a physical impairment that substantially limits one or more major life activities, or (2) [an employer] mistakenly believes that an actual, nonlimiting impairment substantially limits one or more [of an employee's] major life activities.' " [33]

32    *Gruener,* 510 F3d at 664 (citation and internal quotation marks omitted).

33    *Id.* (citation omitted).

Under the facts of this case, there is also evidence that Howard was regarded by the Department as having a physical impairment. Before Pontis indicated that Howard was unable to work as a corrections officer or have "prisoner contact," Howard had been successfully working in the vocational trades department and performing his job duties well. It was not until the Department was told that Howard was having a problem with his back that its perceptions of his abilities changed and the Department decided that he was unable to return work until he obtained medical clearance to return without restrictions. Accordingly, a jury could find that "because of the myths, fears and stereotypes associated with" people with back problems, Howard was prevented by the Department from returning to work. [34]

34    *Id.* (internal quotation marks omitted).

*6 Discrimination under the ADA includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability[.]" [35] "A 'qualified individual with a disability' is 'an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires.' " [36] "A function may be essential under the ADA if ..." '[t]he reason the position exists is to perform that function[.]' " [37]

35    *Talley,* 542 F3d at 1108, quoting 42 USC 12112(b)(5)(A) (quotation marks omitted).

36    *Talley,* 542 F3d at 1108 n. 6, quoting 42 USC 12111(8).

37    *Peden v. City of Detroit,* 470 Mich. 195, 207; 680 NW2d 857 (2004) (citation omitted).

A reasonable accommodation includes "job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices ... [or] other similar accommodations for individuals with disabilities." [38] The plaintiff has the initial burden to "propos [e] an accommodation and show[ ] that that accommodation is objectively reasonable." [39] The employer only then must show that the "accommodation would impose an undue hardship." [40]

38    *Talley,* 542 F3d at 1108, quoting 42 USC 12111(9)(B) (quotation marks omitted).

39   *Talley,* 542 F3d at 1108 (citation and internal quotation marks omitted).

40   *Id.* (citation and internal quotation marks omitted).

Pursuant to the regulations of the ADA, "[t]o determine the appropriate reasonable accommodation [for a given employee,] it may be necessary for the [employer] to initiate an informal, interactive process with the [employee]" to "identify the precise limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations."[41] It has been held that despite the fact that the interactive process was not described in the text of the version of the ADA applicable to the instant case, the interactive process "is mandatory, and both parties have a duty to participate in good faith."[42]

41   *Kleiber v. Honda of America Mfg., Inc.,* 485 F3d 862, 871 (CA 6, 2007) (citations and quotation marks omitted).

42   *Id.*

As explained above, there is a question of fact regarding what Howard's actual position was. Evidence was presented, however, that Howard was a qualified individual with a disability that could perform the essential functions of the position in the vocational trades department. Howard worked in the vocational trades department for approximately nine years. The evidence supports that the Department was aware of his pre-existing back injury causing intermittent pain, and the Department admitted that while in the vocational trades department, Howard performed his job duties well.

Assuming that Howard would require an accommodation to work for the Department, the evidence also shows that a reasonable accommodation was requested. Howard emailed McCormick and Lafler and indicated that he believed that he could continue to work in the vocational trades department. Lafler, however, did not speak with McCormick regarding Howard's status. Howard also emailed Lafler and advised that he wanted to work and that there was plenty to do, but was told to wait and see what limitations his doctor recommended. McCormick testified that after receiving the note from Pontis, Howard's request for a position reclassification or reassignment was not revisited. Houghton testified that he did not have any discussions with anyone regarding reassigning Howard to different duties, did not consider whether Howard needed an accommodation, and was not aware of the "interactive process" of the ADA. Additionally, the Department's human resource department did not have a discussion with Howard to determine the duties associated with his work in the vocational trades department to establish whether Howard could perform those duties, nor was Howard's physician contacted. Human resources instead determined that based on Pontis' note, no accommodations could be made. Pontis testified, however, that his restriction that Howard have no contact with prisoners meant that he was to have no physical contact with prisoners, such as restraining them. Pontis indicated that Howard could perform the job duties contained in the Department's job descriptions of a school teacher, building construction specialist 2, and building construction project superintendent P11. Pontis indicated that he would have provided clearance for Howard to perform such jobs, with the restrictions that Howard was not to restrain prisoners or lift more than 20 pounds. Thus, there was evidence that while an accommodation was requested, the Department failed to engage in the "interactive process" to attempt to make a reasonable accommodation as required.

**\*7** Finally, to demonstrate that he was discriminated against solely because of a disability, Howard must show that he suffered an adverse employment action.[43] As explained above, the evidence shows that after being informed of Howard's back pain and request for a single sick day, he was prohibited from returning to work without receiving 100 percent clearance to return to work without restrictions in the position of a corrections officer. The evidence shows that such a requirement may have been contrary to Department policy. Additionally, the Department allegedly provided Howard's doctor with a job description that did not accurately reflect his job duties which he alleges prevented him from returning to work. Therefore, the record supports that there was an adverse employment action and that Howard was discriminated against solely because of a disability.

43   *Talley,* 542 F3d at 1105.

As noted above, because the note prohibiting Howard from having prisoner contact was written after Howard was allegedly prevented from returning to work without being 100 percent medically cleared to work as a corrections officer, we are not persuaded by the Department's argument that its nondiscriminatory reason for prohibiting Howard from returning to work was the note provided by Howard's doctor. Accordingly, because there were triable issues of material fact regarding the presence of the elements of disability

discrimination under the ADA, the trial court's denial of summary disposition was proper.[44]

[44] *Sallie,* 297 Mich.App at 118.

Similar to the ADA, pursuant to Michigan's Persons with Disabilities Civil Rights Act (PWDCRA), an employer shall not "[d]ischarge or otherwise discriminate against an individual with respect to compensation or the terms, conditions, or privileges of employment, because of a disability ... that is unrelated to the individual's ability to perform the duties of a particular job or position."[45] " 'To prove a discrimination claim under the [PWDCRA], the plaintiff must show (1) that he is [disabled] as defined in the act, (2) that the [disability] is unrelated to his ability to perform his job duties, and (3) that he has been discriminated against in one of the ways delineated in the statute.' "[46]

[45] MCL 37.1202(b).

[46] *Peden,* 470 Mich. at 204.

"Thus, like the ADA, the PWDCRA generally protects only against discrimination based on physical or mental disabilities that substantially limit a major life activity of the disabled individual, but that, with or without accommodation, do not prevent the disabled individual from performing the duties of a particular job."[47]

[47] *Id.*

After it is established that the employee is a "qualified person with a disability" entitled to protection under state law, similar to the ADA, the plaintiff must then demonstrate that the employer engaged in prohibited discriminatory conduct.[48]

[48] *Id.* at 205, citing MCL 37.1202.

> Generally, an employer shall not purposefully discriminate, through direct action or by failing to provide necessary accommodation, against a person because of a disability that is unrelated to that person's ability to do the duties of a job; an employer shall not limit, segregate, or classify employees in a manner that adversely affects a person because of a disability that is unrelated to that person's ability to do the duties of a job; an employer shall not take direct adverse action against an individual on the basis of examinations that are not directly related to the requirements of the job.[49]

[49] *Id.* at 205 n. 8.

*8 An employer has a duty to reasonably accommodate an employee that suffers a disability.[50] The employee has the burden of proving that the employer failed to accommodate the disability.[51] The burden then shifts to the employer to show that the accommodation would impose an "undue hardship."[52] An employer is not required under the PWDCRA "to accommodate the plaintiff by recreating the position, adjusting or modifying job duties otherwise required by the job description, or placing the plaintiff in another position."[53]

[50] MCL 37.1102(2).

[51] MCL 37.1210(1).

[52] *Id.*

[53] *Kerns v. Dura Mech. Components, Inc.,* 242 Mich.App 1, 16; 618 NW2d 56 (2000).

Because the elements of the federal ADA and Michigan's PWDCRA are essentially the same, the same facts support that there were triable issues of material fact regarding whether Howard could satisfy the elements of the PWDCRA. Thus, the trial court properly denied the Department's motion for summary disposition regarding Howard's claim for disability discrimination under state law.

## II. MOTION FOR JUDGMENT NOTWITHSTANDING THE VERDICT

### A. STANDARD OF REVIEW

Appellate review of "a trial court's decision to grant or deny a motion for judgment notwithstanding the verdict" is de novo.[54] The evidence and "all legitimate inferences" are reviewed on appeal in the light most favorable to the nonmoving party.[55] "Only if the evidence so viewed fails to establish a claim as a matter of law, should the motion be granted."[56]

WESTLAW © 2022 Thomson Reuters. No claim to original U.S. Government Works. 7

54   *Craig v. Oakwood Hosp.,* 471 Mich. 67, 77; 684 NW2d 296 (2004).

55   *Sniecizski v. Blue Cross & Blue Shield of Mich,* 469 Mich. 124, 131; 666 NW2d 186 (2003).

56   *Shivers v. Schmiege,* 285 Mich.App 636, 639; 776 NW2d 669 (2009), quoting *Wilkinson v. Lee,* 463 Mich. 388, 391; 617 NW2d 305 (2000) (quotations marks omitted).

### B. AGE DISCRIMINATION

The Department asserts that the trial court erred when it denied its motion for judgment notwithstanding the verdict regarding Howard's claims for age discrimination. We disagree.

The same law regarding Howard's federal and state age discrimination claims discussed above applies to the instant issue. We have reviewed the trial transcripts and evidence submitted at trial and find that the proofs submitted at trial are in accordance with the evidence submitted regarding summary disposition. Therefore, the facts will not be repeated here. Consequently, we find that viewing the evidence in the light most favorable to Howard, the trial court appropriately denied the Department's motion for judgment notwithstanding the verdict regarding Howard's federal and state age discrimination claims, as the Department is not entitled to judgment as a matter of law.[57]

57   *Shivers,* 285 Mich.App at 639.

### C. DISABILITY DISCRIMINATION

Finally, the Department contends that the trial court erred when it denied its motion for judgment notwithstanding the verdict regarding Howard's claims for disability discrimination. We disagree.

Again, the same law regarding Howard's federal and state disability discrimination claims outlined above applies to the instant issue. This Court has reviewed the trial transcripts and the evidence submitted at trial and finds that the proofs submitted at trial are in accordance with the evidence submitted regarding summary disposition. As such, the facts will not be repeated here.

Additionally, ADA and PWDCRA prohibit an employer from discriminating against a disabled individual by requiring a medical examination that is not "shown to be job-related and consistent with business necessity."[58] Based on the testimony elicited at trial, Howard was able to perform the job in the vocational trades department despite his history of back pain. Additionally, the evidence supports that he did not suffer a back injury resulting in his request for a sick day. The evidence further supports that it was not Department policy to require 100 percent medical clearance under the circumstances of Howard's case. Thus, a jury could find that the Department's requirement of a medical examination violated both the ADA and PWDCRA. Accordingly, viewing the evidence in the light most favorable to Howard, the trial court appropriately denied the Department's motion for judgment notwithstanding the verdict regarding Howard's federal and state disability discrimination claims, as the Department is not entitled to judgment as a matter of law.[59]

58   42 USC 12112(a), (d)(4)(A); See also MCL 37.1202(1)(e).

59   *Shivers,* 285 Mich.App at 639.

**\*9** Affirmed.

**All Citations**

Not Reported in N.W.2d, 2013 WL 2223133

End of Document                                              © 2022 Thomson Reuters. No claim to original U.S. Government Works.